# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
Filed: July 30, 2019

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * | PUBLISHED |
| GLORIA BLOCKER CLARK, * | |
| * | No. 18-1981V |
| Petitioner, * | |
| v. * | Special Master Gowen |
| * | |
| SECRETARY OF HEALTH * | Attorneys' Fees and Costs; |
| AND HUMAN SERVICES * | Respondent's Objection to |
| * | Reasonable Basis; Influenza ("Flu"); |
| Respondent. * | Guillain-Barré syndrome ("GBS"); |
| * * * * * * * * * * * * * * * * * * * * | Onset; Alternative Cause. |

Blake R. Carl, Dupree, Kimbrough, & Carl, LLP, Marietta, GA, for petitioner.
Lisa A. Watts, United States Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On December 27, 2018, Gloria Blocker Clark ("petitioner") through counsel filed a petition for compensation in the National Vaccine Injury Compensation Program.[2] Petition (ECF No. 1). After an initial status conference and petitioner's motion for a decision dismissing the petition, it was dismissed for insufficient proof. On June 12, 2019, petitioner filed a motion for attorneys' fees and costs. Petitioner's Motion for Attorney Fees and Costs ("Pet. Fees App.") (ECF No. 17). For the reasons discussed below, I find that there was no reasonable basis for filing the petition. Accordingly, petitioner's motion for attorneys' fees and costs is **DENIED**.

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), because this opinion contains a reasoned explanation for the action in this case, I am required to post it on the website of the United States Court of Federal Claims. The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. **This means the opinion will be available to anyone with access to the Internet.** Before the decision is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). An objecting party must provide the court with a proposed redacted version of the opinion. *Id.* **If neither party files a motion for redaction within 14 days, the opinion will be posted on the court's website without any changes.** *Id.*

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 *et seq.* (hereinafter "Vaccine Act" or "the Act"). Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

## I. Summary of Relevant Medical Records

On September 25, 2015, at the age of 53 years, petitioner received a seasonal flu vaccination. Pet. Ex. 1. Her past medical history was significant for recurrent meningitis, the last episode being two years prior to the vaccination at issue. Pet. Ex. 2 at 5.

Approximately 103 days after the vaccination, on January 6, 2016, she presented to Northside Hospital reporting a history of "paresthesias and numbness all over her body with weakness, headache, difficulty swallowing, and speech issues for the past 3 – 5 days prior to admission." *Id.* She was seen by a neurologist, Dr. Huddleston, who noted that petitioner had a "background of recent bout of recurrent meningitis." Pet. Ex. 3 at 129. Dr. Huddleston suggested petitioner's recurrent meningitis was the "inciting infectious event" that triggered her GBS. *Id.* Dr. Huddleston admitted petitioner to the hospital and ordered a five-day course of IVIg. *Id.* He also ordered bloodwork, which was IgM positive for cytomegalovirus ("CMV"). *Id.*; Pet. Ex. 2 at 5.

On the second day of her admission, petitioner had an acute hypoxic event with respiratory failure and she was placed on a ventilator. Pet. Ex. 2 at 5. On February 1, 2016, she was discharged from Northside Hospital. The discharge summary repeated that the cytomegalovirus was "likely the inciting event for" her GBS. *Id.* At that point, she was transferred to Shepherd Spinal Center for inpatient rehabilitation. *Id.* On April 5, 2016, she was discharged from Shepherd Spinal Center. However, she required outpatient physical therapy for mobility issues until September 29, 2016.

## II. Procedural History

Petitioner and her counsel of record had their first meeting on January 27, 2016. *See* Pet. Fee App. - Tab 1 at 5. Petitioner's counsel acknowledges that this is only the second case in the Vaccine Program in which he has been involved. Pet. Fee App at 2. The fee application does not reflect whether counsel reviewed the Vaccine Injury Table or any past opinions. He spent over two years collecting the records and developing the facts.

On December 27, 2018, petitioner through counsel filed a petition for compensation in the National Vaccine Injury Compensation Program.[3] Petition (ECF No. 1). Petitioner alleged that as a result of receiving an influenza ("flu") vaccination on September 25, 2015, she developed GBS with the onset of symptoms "on or about January 3, 2016." Petition at ¶ 4. Petitioner subsequently filed her medical records and other supporting documents, followed by a Statement of Completion on January 17, 2019 (ECF No. 7).

On February 6, 2019, I held an initial status conference with both parties' counsel pursuant to Vaccine Rule 4(b). I discussed two significant obstacles to petitioner's claim. First, petitioner's allegation, supported by the medical records, was that the onset of her GBS was 100

[3] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 *et seq.* (hereinafter "Vaccine Act" or "the Act"). Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

days after the flu vaccination. This was well outside of the 3 to 42-day timeframe listed on the Vaccine Injury Table, thus, petitioner cannot allege a "Table injury."[4] In my estimation, it would be difficult for petitioner to obtain a credible expert opinion supporting that temporal association. Second, treating physicians' opinions are probative in the Vaccine Program and in this case, the treating physicians recorded that after the flu vaccination, petitioner experienced a viral illness that was the more proximate, and therefore more likely, cause of her GBS. I directed petitioner and her counsel to discuss these issues and consider seeking a voluntary dismissal of the claim. Scheduling Order filed February 20, 2019 (ECF No. 10). Afterwards, counsel did review several past cases. Pet. Fee App., Tab 1 at 14.

On March 20, 2019, petitioner filed a motion for a decision dismissing the petition. (ECF No. 11). That same day, I granted petitioner's motion and entered a decision dismissing the petition. (ECF No. 12). Judgment was entered on April 23, 2019. (ECF No. 14).

On June 12, 2019, petitioner filed an application for attorneys' fees and costs on June 12, 2019.[5] Pet. Fees App. (ECF No. 17). Petitioner requests $23,888.00 in attorneys' fees and $6,550.48 in costs, for a total request of $30,438.98. *Id.* at 5. Petitioner's counsel avers that the claim did not result in compensation "due to the 'off-table' nature of injuries as well as some past medical issues petitioner experienced"; however, the petition was brought in good faith and with a reasonable basis. Pet. Fee App at 4.

On June 20, 2019, respondent filed a response, in which he opposes petitioner's application in its entirety on the grounds that she has failed to establish a reasonable basis for her claim and is therefore not entitled to receive any award of attorneys' fees and costs. Respondent's ("Resp.") Response (ECF No. 18). Respondent specifically cites to the two obstacles to petitioner's claim, identified during the initial status conference. *Id.* Petitioner did not file a reply thereafter. This matter is now ripe for adjudication.

## III. Legal Standard

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." 42 U.S.C. §§ 300aa-15(e)(1). If a petitioner succeeds on the merits of his or her claim, the special master shall award reasonable attorneys' fees and costs.

However, a petitioner need not prevail on entitlement to receive a fee award as long as "the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim." § 15(e)(1). The Federal Circuit reasoned that in formulating this standard, Congress intended "to ensure that vaccine injury claimants have readily available a

[4] I noted that even if petitioner amended her claim to allege that onset was earlier - e.g., between the vaccination on September 25, 2015 and December 27, 2015 – that would result in a finding that the petition was filed out of time. Scheduling Order (ECF No. 10) at 1 n.1.

[5] Petitioner initially filed an application for attorneys' fees and costs on June 10, 2019. (ECF No. 15). This motion was struck for being filed under the wrong docketing event and not including the correct documentation for attorneys' costs. *See* Order (ECF No. 16).

competent bar to prosecute their claims." *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012).

"Good faith" and "reasonable basis" are two distinct requirements. *Simmons v Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (citing *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 289 (2014)). Good faith is a subjective inquiry. *Id.*

In contrast to good faith, "reasonable basis" is an objective consideration which "looks not at the likelihood of success" but rather to the "feasibility of the claim." *Chuisano*, 116 Fed. Cl. at 286. In evaluating reasonable basis, the special master may not consider the statutory limitations deadline or related conduct by counsel. *Simmons*, 875 F.3d 632 at 636. However, the special master may consider many other objective factors including the "the factual basis of the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018). The reasonable basis inquiry is "broad enough to encompass any material submitted in support of the claim at *any* time in the proceeding, whether with the petition or later." *Chuisano*, 116 Fed. Cl. at 287 (emphasis added).

Indeed, a petitioner is not required to file a petition with medical records or an expert report in order to meet the reasonable basis standard. *See McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 303 (2011); *see also Carter v. Sec'y of Health & Human Servs.*, 132 Fed. Cl. 372, 382 (2017). Related to that point, counsel has some obligation to investigate the claim and what issues may represent obstacles to compensation both before and after filing; however, reasonable basis is ultimately established by objective proof for the claim, as emphasized by the Federal Circuit. *Smith v. Sec'y of Health & Human Servs.*, No. 17-1169V, 2019 WL 1953358 at *2 (Fed. Cl. Spec. Mstr. March 29, 2019) (citing *Simmons*, 875 F.3d at 636).

## IV. Analysis

The injury alleged in this case, GBS, is recognized to be an autoimmune condition that is acute and monophasic in nature. If a petitioner establishes that he or she received a flu vaccination and subsequently developed GBS within 3 – 42 days thereafter, he or she is presumed to be entitled to compensation for that injury.[6] However, in this case, petitioner received the flu vaccination at issue on September 25, 2015. Petitioner alleges and the medical records corroborate that the onset of GBS symptoms was approximately 100 days (almost 15 weeks) thereafter, on January 3, 2016. Petition at ¶ 4; Pet. Ex. 2 at 5. This bars petitioner from alleging a Table injury. As previously noted, if petitioner attempted to amend her allegation of onset to late December 2015 or earlier, the petition would be time-barred.

Although a longer-alleged symptom onset does not automatically negate reasonable basis, the onset of GBS approximately 100 days of flu vaccination was a significant obstacle. As petitioner cannot allege a Table injury, she had the burden of proving by a preponderance of the evidence that her September 25, 2015 flu vaccination actually caused her alleged injury. She was required to establish "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and

[6] *See* Vaccine Injury Table, 42 U.S.C. § 100.3.

injury." *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005). To satisfy this test, it is generally necessary for petitioner to submit a supportive opinion from a qualified medical expert and supporting medical literature. Based on my experience in the Vaccine Program, it would be difficult for petitioner to retain a credible expert opinion supporting such an attenuated temporal association. This is also supported by a review of cases. In general, the Vaccine Program does not accept a temporal association between flu vaccination and GBS longer than eight weeks. In contrast, a more attenuated temporal association is a significant obstacle. *See, e.g.*, *Finch v. Sec'y of Health & Human Servs.*, No. 17-675V, 2018 WL 3991132 (Fed. Cl. Spec. Mstr. July 24, 2018) (dismissing petition with an onset of 20 weeks post-vaccination); *Halm v. Sec'y of Health & Human Servs.*, No. 17-338V, 2017 WL 6892887 (Fed. Cl. Spec. Mstr. Nov. 8, 2017) (15 weeks); *Alvarez v. Sec'y of Health & Human Servs.*, No. 16-1438V, 2017 WL 4365058 (Fed. Cl. Sept. 5, 2017) (20 weeks); *Angdahl-Wangler v. Sec'y of Health & Human Servs.*, No. 16-1222V, 2016 WL 7423077 (Fed. Cl. Spec. Mstr. Nov. 28, 2016) (9.5 weeks); *Perez v. Sec'y of Health & Human Servs.*, No. 14-0935V, 2016 WL 3092233 (Fed. Cl. Spec. Mstr. Apr. 15, 2016) (20 weeks); *Schmidt v. Sec'y of Health & Human Servs.*, No. 13-382V, 2015 WL 1088225 (Fed. Cl. Spec. Mstr. Feb. 13, 2015) (12 weeks); *Corder v. Sec'y of Health & Human Servs.*, No. 08-22V, 2011 WL 2469736 (Fed. Cl. Spec. Mstr. May 31, 2011) (declining to go beyond 8 weeks, despite supportive opinion from a neurologist with significant experience in the Vaccine Program). Petitioner did not submit any evidence to address this issue.

Additionally, a petitioner is required to show that there is a logical sequence of cause and effect between the vaccine and his or her injury. In this case, the medical records do not reflect that any treating physician drew an association between the flu vaccination on September 25, 2015 and the GBS which manifested approximately 15 weeks later, on January 3, 2016. One medical record dated July 19, 2016, provides: "Pt notes told GB from flu shot." Pet. Ex. 3 at 457. At most, this reflects petitioner's own belief that the flu vaccine caused her GBS based on a conversation with an unknown person, without any rationale. This notation does not represent a treating physician's opinion in support of vaccine causation. Neither has petitioner provided an expert opinion in support of vaccine causation.

A petitioner is not entitled to Vaccine Program compensation if his or her injury is more likely caused by an unrelated factor. This is sometimes evaluated under *Althen* prong two (whether there is a logical sequence of cause and effect between the vaccine and the injury). *Althen*, 418 F.3d 1278. Alternatively, it is evaluated when petitioner makes a *prima facie* showing of vaccine causation; then, the burden of proof shifts to respondent to show by a preponderance of the evidence that the injury had an alternative cause. § 13(a)(1)(B); *Deribeaux v. Sec'y of Health & Human Servs.,* 717 F.3d 1363, 1367 (Fed. Cir. 2013). In this case, I readily identified – and respondent concurred – that there was a likely alternative cause for petitioner's GBS. Specifically, upon initially presenting with symptoms of GBS, petitioner reported that she had a "recent bout of recurrent meningitis." Pet. Ex. 2 at 5. Her serum sample was positive for IgM antibodies for cytomegalovirus (CMV). The attending neurologist, Dr. Huddleston, concluded that the CMV was the "inciting infectious event" that triggered her GBS. Pet. Ex. 3 at 129; Pet. Ex. 2 at 5. I do not see reason to disagree with this treating physician. The presence of IgM antibodies strongly suggest that petitioner had a CMV infection at the time or shortly before the onset of her GBS. Furthermore, within the Vaccine Program, CMV is recognized as a common inciting agent for GBS. *See, e.g.*, *Reichert v. Sec'y of Health & Human Servs.*, 16-

697V, 2018 WL 4496561 at *5 (Fed. Cl. Spec. Mstr. Aug. 2, 2018); *Angdahl-Wangler*, 2016 WL 7423077. Petitioner did not present any medical opinion or literature to rebut the likely causal role of the CMV infection.

Upon consideration of the objective evidence in this case including the 100 days separating the flu vaccination and the onset of petitioner's GBS, the lack of association between those two events, and the presence of an intervening possible alternative cause, I find that there was no reasonable basis for filing the petition. *Compare to Alvarez*, 2017 WL 4365058 (denying reasonable basis where onset was 20 weeks after vaccination and there was an intervening possible alternative cause). Accordingly, petitioner is not eligible for an award of attorneys' fees and costs.

While this ultimately does not determine the finding as to reasonable basis under *Simmons*, I note that petitioner's counsel is expected to investigate a claim prior to filing. Often, a potential vaccine injury claim can involve complex questions about medical conditions and immunological concepts that are seen rarely or never before. This is not one of those cases. Here, petitioner's counsel had ample time to investigate the claim. He had almost two years between meeting petitioner for the first time and filing the petition on her behalf. Pet. Fees App. at 3. He could have recognized that petitioner's case was well outside of the generally accepted timeframe for flu/ GBS claims as reflected in the Vaccine Injury Table and the case law and that the treating physicians identified a more likely cause. A recognition of these obstacles would very likely have led to a conclusion that there was no reasonable basis for filing the petition. I am sympathetic to the difficult experience that petitioner has suffered and I wish her well. I appreciate petitioner and her counsel's prompt attention to the issues presented in her claim and their filing of a motion for a decision dismissing the claim. However, a reasonable basis for the petition was not established.[7]

## V. Conclusion

For the aforementioned reasons, petitioner's application for attorneys' fees and costs is **DENIED**. In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court shall enter judgment in accordance herewith.[8]

**IT IS SO ORDERED.**

**s/Thomas L. Gowen**
Thomas L. Gowen
Special Master

[7] As noted during the initial status conference, the law firm of Dupree, Kimbrough & Carl, LLP continues to advertise specialized knowledge and experience with filing claims in the Vaccine Program, although the firm has only handed two such claims (including this one, for which I have found there was no reasonable basis). *See* Dupree, Kimbrough & Carl, LLP – Vaccine Claims, available at https://www.dupree-lawfirm.com/vaccine-claims/ (last accessed July 26, 2019); discussed in Scheduling Order (ECF No. 10). I again advise the law firm to limit its representations about its experience and knowledge of the Vaccine Program unless and until that is more accurate.

[8] Entry of judgment is expedited by each party's filing notice renouncing the right to seek review. Vaccine Rule 11(a).